IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN LaFLAMBOY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 05 C 4994 |
| | ) | |
| v. | ) | |
| | ) | |
| STEVEN LANDEK, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiff John LaFlamboy asserts four causes of action against multiple Defendants in connection with the allegedly wrongful divestiture of Plaintiff's ownership of the World Golf Dome ("WGD").[1] Specifically, Plaintiff brings a civil Racketeer Influenced and Corrupt Organizations Act ("RICO") claim pursuant to 18 U.S.C. § 1962(c) and a RICO conspiracy claim pursuant to 18 U.S.C. § 1962(d) against Defendants Steven Landek, Kenneth DeVries, Steven Reynolds, Adriana Mazutis, Fred Pascente, Vincent Cainkar, John Curry, Joseph Kaput, Butch Sloan, and Allan Gustafson (the "RICO Defendants"). Additionally, Plaintiff asserts a 42 U.S.C. § 1983 claim against Defendants the Village of Bridgeview, Landek, in his official capacity, DeVries, individually, Reynolds, individually, Mazutis, individually, Pascente, individually, Cainkar, in his official capacity, Curry, in his official capacity, Kaput, in his official capacity, Sloan, in his official capacity, and Gustafson, individually. Lastly, Plaintiff brings a state law breach of contract claim against DeVries. Four motions to dismiss the Amended

---

[1] According to Plaintiff, the WGD is currently known as the Bridgeview Sports Dome. (R. 51-1; Am. Compl. at 2, ¶ 14.)

Complaint are currently pending before the Court. Cainkar brings a motion to dismiss and purports to adopt the arguments of the other Defendants; Gustafson brings a motion to dismiss and for sanctions; Landek, Curry, Kaput, and Sloan (together, the "Landek Defendants") bring a motion to dismiss and to strike; and DeVries brings a motion to dismiss. Cainkar, DeVries, Reynold, and Mazutis adopt the Landek Defendants' motion to dismiss and to strike.

## BACKGROUND

### I. The Parties

#### A. Plaintiff

Plaintiff, a resident of Illinois, was the previous co-owner of the WGD. (R. 51-1; Am. Compl. at 1-2, ¶¶ 2, 3.)

#### B. Defendants

The Village of Bridgeview (the "Village") is a municipal corporation and a political subdivision of the State of Illinois, located approximately fifteen miles southwest of Chicago. (*Id*. at 4, ¶ 17(A).) Landek has been the Mayor of the Village since April 1999. (*Id*. at 5, ¶ 17(C).) DeVries was the owner of The Scoreboard, Ltd. (the "Scoreboard"), which was a bar and restaurant located on the premises of the WGD. (*Id*. at 5, ¶ 17(D).) DeVries signed a five-year lease with Plaintiff for the tenancy of the Scoreboard on September 30, 1999. (*Id*.) Reynolds served as an advisor to Landek, and was a former employee of the Village and of the Cook County Forest Preserve District. (*Id*. at 5, ¶ 17(E).) In or about November of 2002, the Village hired Reynolds as a janitor. (*Id*. at 32, ¶ 64(A).) Plaintiff alleges that this employment was a "cover" for Reynolds' work on behalf of the purported RICO enterprise. (*Id*.) Mazutis was Reynolds' business partner and fiancee. (*Id*. at 5, ¶ 17(F).) Pascente was a personal associate of Reynolds and a former Chicago police officer. (*Id*. at 5, ¶ 17(G).) Cainkar was an

attorney and a member of the law firm Louis F. Cainkar, Ltd., located in Burbank, Illinois. (*Id*. at 6, ¶ 17(H).) In May of 1999, Landek appointed Cainkar's law firm to the position of attorney for the Village. (*Id*.) Also in May of 1999, Landek appointed Curry to the position of Director of Building Inspection Services for the Village. (*Id*. at 6, ¶ 17(I).) In May of 2001, Curry became the Code Enforcement Inspector for the Village and Kaput became the Director of Building and Inspection Services. (*Id*. at 6, ¶ 17(I), (J).) Sloan was a police officer for the Village. (*Id*. at 6, ¶ 17(K).) Gustafson was Plaintiff's former business associate and owned fifty-percent of the WGD prior to September 2003. (*Id*. at 6, ¶ 17(L).)

### C. Other Entities

The WGD is a sports and events facility located in the Village. (*Id*. at 2, ¶ 3.) Plaintiff alleges that he "envisioned, planned, and developed" the WGD. (*Id*. at 2, ¶ 14.) Plaintiff purchased the site for the WGD in March of 1998. (*Id*.) Construction on the site commenced in June of 1999, and the WGD opened for business in November of 1999. (*Id*. at 2-3. ¶ 14.) The WGD featured an inflatable dome with a 75-foot ceiling height, in which activities such as golf, soccer and softball could take place throughout the year. (*Id*. at 3, ¶ 14.) Plaintiff and Gustafson each owned fifty-percent of the WGD. (*Id*.) Plaintiff alleges that he was involved in the day-to-day operation and management of the WGD. (*Id*.) The Office of the Mayor of Bridgeview (the "Mayor's Office") is a local governmental and municipal department. (*Id*. at 5, ¶ 17(B).)

## II. Plaintiff's General Allegations

Plaintiff claims that on September 15, 2003, through an alleged pattern of illegal, fraudulent, racketeering acts, Defendants, in the course of a purported RICO conspiracy, wrongfully divested Plaintiff of his ownership of the WGD. (*Id*. at 3, ¶ 15.) Plaintiff alleges a three-part RICO enterprise including: (1) the Village; (2) the Mayor's Office; and (3) an

3

association in fact of the RICO Defendants.[2]  (*Id*.)  Plaintiff contends that each RICO Defendant "exercised a degree of direction over the Enterprise's affairs and/or played a role in its operation, management or control."[3]  (*Id*.)  The RICO Defendants allegedly operated the purported enterprise for over five years.  (*Id*. at 21, ¶ 59.)  According to Plaintiff, the RICO Defendants' "primary goal was to facilitate the acquisition of the WGD by the Village of Bridgeview, which required (1) divesting the Plaintiff of his ownership and control of the facility; and thereafter (ii) vesting the Village with ownership of the WGD in a manner that would appear 'legitimate' while guaranteeing monetary rewards for the members of the conspiracy."  (*Id*. at 4, ¶ 16.)  Plaintiff further alleges that "[t]he ultimate goal of the defendants . . . was to use the WGD . . . as a means of enticing the Chicago Fire professional soccer team to choose the Village for its home stadium site."[4]  (*Id*.)  Additionally, Plaintiff has set forth other goals of the alleged RICO conspiracy, including: (1) to allegedly obtain illegal financial gains for the RICO Defendants; and (2) to conceal the RICO Defendants' goals from public exposure.  (*Id*. at 8, ¶ 20.)  Plaintiff further alleges that "there remains a manifest threat that the defendants will continue to operate the Enterprise, by and through a pattern of racketeering activity, to garner illegal and wrongful gains

---

[2] Plaintiff also alleges that "[t]he Civil RICO Enterprise(s) include the Village of Bridgeview and the Mayor's Office."  (*Id*. at 21, ¶ 58.)  Because Plaintiff does not develop or support this allegation, and because Plaintiff specifically defines the "Enterprise" as the three-part enterprise consisting of the Village, the Mayor's Office and the RICO Defendants, (*id*. at 3, ¶ 15), the Court analyzes Defendants' motions to dismiss and the viability of Plaintiff's RICO claims only as to the purported three-part enterprise.

[3] In support of this contention, Plaintiff sets forth thirty-one pages of allegations detailing the predicate acts each RICO Defendant allegedly committed in connection with the purported fraud and other allegedly improper conduct in which the RICO Defendants engaged.

[4] According to Plaintiff, the WGD could serve as a winter practice facility for the Chicago Fire.  (*Id*. at 8, 14, ¶¶ 20, 53.)

for themselves and their confederates out of the $18.5 million in estimated annual revenue which the new home stadium . . . will bring to the area." (*Id*. at 23, ¶ 60.) Plaintiff contends that the RICO Defendants committed numerous predicate acts in furtherance of the purported RICO conspiracy including: engaging in mail and wire fraud and "the issuance of disingenuous and unfounded tickets, citations, fines and injunctions; the orchestration of a campaign of bogus lawsuits; the surreptitious dumping of garbage and other hard-to-remove debris; the subjection of the Plaintiff and his employees to physical intimidation, the brandishing of weapons, and other threats to their safety; and the forging of the Plaintiff's signature on a 'settlement agreement.'" (*Id*. at 9, 22, ¶¶ 22, 59.) Plaintiff asserts that as a result of Defendants' conduct, he suffered losses to his business and property in excess of $6 million. (*Id*. at 4, ¶ 16.)

## ANALYSIS

**I.    Legal Standard**

Defendants bring their motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion tests whether plaintiff has "state[d] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court views "the complaint in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor." *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003). The Court will dismiss a complaint under Rule 12(b)(6) only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984).

**II.    RICO Claim – 18 U.S.C. § 1962(c)**

Plaintiff alleges a violation of 18 U.S.C. § 1962(c) against the RICO Defendants. Section

1962(c) states that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "A violation of § 1962(c) . . . requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S. Ct. 3275, 3285, 87 L. Ed. 2d 346 (1985) (footnote omitted). The RICO Defendants move the Court to dismiss Plaintiff's § 1962(c) claim.

The RICO Defendants argue that Plaintiff's § 1962(c) claim fails because, among other things, Plaintiff fails to allege the existence of a valid RICO enterprise. "Regarding pleading, the first rule is that [a] plaintiff must identify the enterprise." *Jennings v. Emry*, 910 F.2d 1434, 1439-40 (7th Cir. 1990) (citations and internal quotations omitted). Section 1961(4) defines a RICO "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Seventh Circuit has explained that a RICO enterprise is "an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." *Jennings*, 910 F.2d at 1440 (citations omitted). An enterprise "must be more than a group of people who get together to commit a pattern of racketeering activity." *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir. 1995) (citations and internal quotations omitted). "The hallmark of an enterprise is a structure." *Id*. (citations and internal quotations omitted). Indeed, its structure distinguishes a RICO enterprise from a conspiracy. *Burdett v. Miller*, 957 F.2d 1375, 1379 (7th Cir. 1992). "An enterprise can be formal or informal; there need not be much structure, but the enterprise must have some

continuity and some differentiation of the roles within it." *Richmond*, 52 F.3d at 645 (citing *Burdette*, 957 F.2d at 1379). Additionally, there must be "'a common purpose of engaging in a course of conduct.'" *Id.* (quoting *United States v. Turkette,* 452 U.S. 576, 583, 101 S. Ct. 2524, 2528, 69 L. Ed. 2d 246 (1981)).

Plaintiff alleges the existence of a three-part enterprise: (1) the Village; (2) the Mayor's Office; and (3) an association in fact of the RICO Defendants. (R. 51-1; Am. Compl. at 21, ¶ 57.) Plaintiff's allegations fall short of establishing a RICO enterprise because he does not allege the existence of "an organization with a structure . . . separate from the predicate acts themselves." *United States v. Masters*, 924 F.2d 1362, 1367 (7th Cir. 1991). In *Newkirk v. Village of Steger*, No. 02-9077, 2004 WL 2191589 (N.D. Ill. Sept. 24, 2004), the court stated that allegations that described "what Defendants allegedly did . . . [said] nothing about the structure of the purported enterprise," and held that such allegations were "insufficient even under the liberal pleading standards of Rule 8(a)." 2004 WL 2191589, at *16. Similarly, in *Starfish Inv. Corp. v. Hansen*, 370 F. Supp. 2d 759 (N.D. Ill. 2005), the court held that the plaintiff had failed to establish the existence of a RICO enterprise where, with one exception, "each member's role was to engage in the predicate acts underlying . . . [the] RICO claims" and no criminal enterprise existed apart from the purported predicate acts. 370 F. Supp. 2d at 770-71; *see also Okaya v. Denne Indus., Inc.*, No. 00-1203, 2000 WL 1727785, at *4 (N.D. Ill. Nov. 20, 2000) ("Plaintiff has not pled the existence of a structure apart from the alleged racketeering activity itself."). Plaintiff, in his responses to the various motions to dismiss, repeatedly asserts that the Amended Complaint alleges the existence of a "hierarchical and consensual decision-making apparatus." (*See*, *e.g.*, R. 44-1; Pl.'s Resp. to Landek, Curry, Kaput and Sloan's Mot. to Dismiss at 8.) Plaintiff, however, pleads no allegations to support such a contention. Indeed, there are no

7

allegations setting forth the role each RICO Defendant served in the purported enterprise and no allegations describing the purported hierarchy. Instead, Plaintiff alleges, at length, the predicate acts that the RICO Defendants allegedly committed. The Amended Complaint contains a series of allegations regarding meetings, correspondence and various purportedly illegal acts. These allegations are insufficient to establish the existence of an enterprise. *See Jennings*, 910 F.2d at 1440; *see also Richmond*, 52 F.3d at 645.

Furthermore, Plaintiff has not alleged that the purported enterprise has a purpose apart from the alleged scheme involving the WGD. A RICO enterprise must have goals that are separate from the purported predicate acts. *See Masters*, 924 F.2d at 1367. Numerous courts in this district have dismissed § 1962(c) claims where the purported enterprise had no goals beyond the alleged conspiracy to defraud the plaintiff. *See*, *e.g.*, *Cement-Lock v. Gas Tech. Inst.*, No. 05-0018, 2005 WL 2420374, at *19 (N.D. Ill. Sept. 30, 2005) (finding no RICO enterprise where "Defendants' only purpose was to divert grant money meant for Cement-Lock Group" which "served only Defendants' individual self interest"); *Timm, Inc. v. Bank One Corp.*, No. 04-3541, 2005 WL 2347231, at **1, 4 (N.D. Ill. Sept. 22, 2005) (finding no RICO enterprise where "plaintiffs only allege that the defendants and non-defendant participants associated for the single purpose of" acquiring control of two plaintiff corporations from the individual plaintiffs); *Okaya*, 2000 WL 1727785, at *4 (finding no RICO enterprise where "Plaintiff has not alleged that the Denne Defendants were organized for any purpose other than converting and selling Plaintiff's steel"). In this case, the purported enterprise had no purpose separate from the alleged scheme involving the WGD. *See Timm, Inc.*, 2005 WL 2347231, at *4 ("There were no goals or organization independent of the alleged scheme."). Furthermore, there are no allegations that the RICO Defendants' alleged activities benefitted the purported enterprise, as opposed to

8

benefitting the RICO Defendants individually. *See Okaya*, 2000 WL 1727785, at *4 (the complaint failed to address "how Defendants' activities benefitted the group as an independent entity").

For these reasons, Plaintiff fails to allege the existence of a RICO enterprise. Because an enterprise is a necessary component of a § 1962(c) claim, the Court dismisses this claim without prejudice, and need not address Defendants' arguments regarding other pleading deficiencies. *See Cement-Lock*, 2005 WL 2420374, at *19 n.29 ("As the court finds that Plaintiffs have not adequately pleaded the enterprise element of RICO, the court need not address their allegations as to Defendants' alleged pattern of racketeering."); *see also Starfish Inv. Corp.*, 370 F. Supp. 2d at 771 ("fail[ure] to allege the existence of a RICO enterprise . . . is sufficient to justify dismissal of . . . RICO claims").

### III.    RICO Conspiracy Claim – 18 U.S.C. § 1962(d)

Plaintiff further alleges that the RICO Defendants "have each agreed and conspired, in violation of 18 U.S.C. § 1962(d), to engage in a pattern of racketeering activity [in violation of 18 U.S.C. § 1962(c)] with the intention of cheating, defrauding, and otherwise forcing the Plaintiff to give up his ownership rights to the WGD, and to accomplish the related goals of the Racketeering Conspiracy." (R. 51-1; Am. Compl. at 55, ¶ 73.) Because Plaintiff fails to establish a violation of § 1962(c), his § 1962(d) claim, which he bases on the same facts as his § 1962(c) claim, also fails. *See, e.g., Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 677 (7th Cir. 2000) (citing *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1026 (7th Cir. 1992)).

### IV.    42 U.S.C. § 1983 Claim

Additionally, Plaintiff alleges that the Village, Landek, DeVries, Reynolds, Mazutis,

Pascente, Cainkar, Curry, Kaput, Sloan, and Gustafson "jointly and severally, acting under color of state and municipal law and in furtherance of a scheme and conspiracy to exert wrongful and illegal pressure upon Plaintiff to force him to give up his ownership of the World Golf Dome," violated Plaintiff's Fifth and Fourteenth Amendment rights. (R. 51-1; Am. Compl. at 57, ¶ 57.) Certain Defendants argue that the Court should dismiss Plaintiff's § 1983 claim because he: (1) fails to allege a violation of any constitutional or statutory right; (2) does not assert his § 1983 claim against the Village; (3) does not plead a clear and concise statement of his claim in violation of Federal Rules of Civil Procedure 8(a) and 8(e); and (4) cannot maintain that DeVries or Gustafson acted under color of state law.

These arguments do not justify dismissing Plaintiff's § 1983 claim. As an initial matter, Plaintiff cured some of these alleged defects when he filed the Amended Complaint on January 18, 2006. In the Amended Complaint, Plaintiff specifically asserts his § 1983 claim against the Village, and he alleges violations of the Fifth and Fourteenth Amendments. Additionally, Plaintiff's claim satisfies the requirements of Rules 8(a) and 8(e) of a short and plain statement. Dismissal for failure to plead a short and plain statement of claim "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (citing *Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir. 1969)); *see also Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) ("Fat in a complaint can be ignored, confusion or ambiguity dealt with by means other than dismissal."). Plaintiff's § 1983 claim provides Defendants with adequate notice.

Furthermore, the Court cannot, at this point in the litigation, dismiss Plaintiff's § 1983 claim as to DeVries or Gustafson on the ground that they purportedly did not and could not have

acted under color of state law. The Seventh Circuit "has recognized two circumstances in which defendants may be found to act under color of state law. The first is when the state has cloaked the defendants in some degree of authority – normally through employment or some other agency relationship." *Case v. Milewski*, 327 F.3d 564, 567 (7th Cir. 2003). "The second circumstance . . . is when the defendants have conspired or acted in concert with state officials to deprive a person of his civil rights." *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S. Ct. 1598, 1605, 26 L. Ed. 2d 142 (1970)). Although Plaintiff does not allege that the State of Illinois cloaked DeVries, the owner of the Scoreboard, or Gustafson, Plaintiff's former business associate, in any degree of authority, Plaintiff does set forth allegations of a purported conspiracy between DeVries, Gustafson and state officials to deprive Plaintiff of his civil rights. Accordingly, it is not the case that "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Cler v. Illinois Educ. Ass'n*, 423 F.3d 726, 729 (7th Cir. 2005) (citations and internal quotations omitted). For these reasons, Plaintiff's § 1983 claim stands.[5]

## V. State Law Breach of Contract Claim

DeVries asserts that the Court must dismiss Plaintiff's state law breach of contract claim for lack of subject matter jurisdiction. Because Plaintiff's § 1983 claim survives, the Court can properly exercise supplemental jurisdiction over Plaintiff's breach of contract claim pursuant to 28 U.S.C. § 1367. Therefore, the Court denies DeVries' motion to dismiss Plaintiff's breach of contract claim.[6]

---

[5] The Court also denies certain Defendants' requests that it strike Plaintiff's § 1983 claim.

[6] For the first time in his reply, DeVries argues for dismissal of Plaintiff's breach of contract claim because Plaintiff has not attached to the Amended Complaint a copy of the written

## VI. Motion to Strike

Certain Defendants move to strike numerous paragraphs of the Amended Complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(f).

### A. Rule 9(b)

Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Certain Defendants argue that Plaintiff does not plead numerous paragraphs of the Amended Complaint with the requisite particularity, and that the Court should strike those paragraphs. While Rule 9(b) is "applicable to allegations of fraud in a civil RICO complaint," *Midwest Grinding Co., Inc.*, 976 F.2d at 1020 (citations omitted), it does not apply to § 1983 claims, *see Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69, 113 S. Ct. 1160, 1163, 122 L. Ed. 2d 517 (1993), or breach of contract claims, *see ABC-NACO, Inc. v. Deruyter*, No. 99-1969, 1999 WL 521171, at *5 (N.D. Ill. July 14, 1999). Because the Court dismisses Plaintiff's RICO claims, and only Plaintiff's § 1983 and breach of contract claims remain, Rule 9(b) is inapplicable and Defendants' argument fails.

### B. Rule 12(f)

Rule 12(f) allows a court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Allegations may be stricken as scandalous if the matter bears no possible relation to the controversy or may cause the objecting party prejudice." *Talbot v. Robert Matthews Distrib.*

---

instrument upon which Plaintiff bases his claim. DeVries' argument, however, is waived because he raises it for the first time in his reply. *See Luellen v. City of East Chicago*, 350 F.3d 604, 612 n.4 (7th Cir. 2003).

*Co.*, 961 F.2d 654, 664 (7th Cir. 1992) (citations omitted). "The decision whether to strike material as scandalous is within the discretion of the district court." *Id*. at 665 (citations omitted.) Certain Defendants argue that the Court should strike paragraphs 23, 25, 31, 62(B), 63(A), 63(C), and 64(B) from the Amended Complaint for violating Rule 12(f). Paragraph 23 alleges that Landek used his position as Mayor to further the allegedly fraudulent scheme. (R. 51-1; Am. Compl. at 9, ¶ 23.) Paragraph 25 alleges that Curry disrupted the operation of the WGD with "picayune and unfounded warnings, citations and injunctions, in order to make it increasingly difficult for the Plaintiff to retain ownership of the WGD and earn his livelihood from the same." (*Id*. at 9, ¶ 25.) Paragraphs 31, 62(B) and 63(A) allege that Landek met with DeVries regarding skimming "political donations" from a concert at the WGD, DeVries arranged for the skimming to occur, and he turned over such "donations" to Landek. (*Id*. at 10, 24, 29, ¶¶ 31, 62(B), 63(A).) Paragraph 63(C) alleges that in furtherance of the allegedly fraudulent scheme, on October 14, 2000, "DeVries composed and sent a letter to Plaintiff listing the former's purported grievances about parking and refreshments at a 'Haunted Spaceship' event at the WGD, this letter courtesy-copied to Landek, Curry, Sloan and other agents of the Enterprise." (*Id*. at 30, ¶ 63(C).) Paragraph 64(B) alleges that to facilitate the goals of the alleged conspiracy, Reynolds authorized the purchase of $14,000 in janitorial supplies from a company Landek owned. (*Id*. at 33, ¶ 64(B).) These allegations, according to certain Defendants, violate Rule 12(f) because they purportedly contain numerous immaterial assertions that are unrelated to Plaintiff's RICO and § 1983 claims and serve only to provoke negative public opinion. The Court does not find that these allegations bear no possible relationship to the controversy at issue, thus Defendants' request to strike paragraphs 23, 25, 31, 62(B), 63(A),

13

63(C), and 64(B) from the Amended Complaint pursuant to Rule 12(f) is denied.[7]

**VII.    Motion for Sanctions**

Gustafson seeks sanctions against Plaintiff under Federal Rule of Civil Procedure 11. "Rule 11 imposes a duty on attorneys to ensure that any papers filed with the court are well-grounded in fact, legally tenable, and not interposed for any improper purpose." *Brunt v. Service Employees Int'l Union*, 284 F.3d 715, 721 (7th Cir. 2002) (citations omitted). "Sanctions will be imposed if counsel files a complaint with improper motives or without adequate investigation." *Id.* (citations omitted). Gustafson argues that the Court should impose sanctions pursuant to Rule 11 because Plaintiff purportedly "failed to make a reasonable inquiry into the facts" and "failed to research the RICO statute and the Civil Action for Deprivation of Rights statute." (R. 21-1; Gustafson's Mot. to Dismiss and Br. in Supp. of Mot. to Dismiss and for Sanctions at 13.) The Court will not impose Rule 11 sanctions because the record before it does not demonstrate that Plaintiff's motives in bringing his RICO claims were improper or that he failed to conduct an adequate investigation. Furthermore, the Court will not impose sanctions on Plaintiff for bringing a claim under § 1983 because the Court does not dismiss that cause of action.

---

[7] The Court also denies certain Defendants' requests to strike the Amended Complaint in its entirety pursuant to Rule 12(f).

## CONCLUSION

For these reasons, Defendants' motions to dismiss are granted in part and denied in part. Plaintiff has until April 11, 2006 to file a Second Amended Complaint to address the deficiencies noted in this opinion.[8]


Dated: March 21, 2006                                        ENTERED:

                                                                     AMY J. ST. EVE
                                                                     United States District Court Judge

---

[8] In the Second Amended Complaint, Plaintiff should designate each claim with a different Roman numeral and should number each paragraph consecutively, instead of restarting the numbering under each count.